COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins
Argued at Richmond, Virginia


HISTORIC FREDERICKSBURG FOUNDATION, INC.

                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 0822-23-2                    JUDGE DOMINIQUE A. CALLINS
                                                    DECEMBER 10, 2024
THE CITY COUNCIL FOR THE CITY OF
  FREDERICKSBURG, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Sarah L. Deneke, Judge

H. Clark Leming (Peter R. Basanti; Leming and Healy P.C., on
briefs), for appellant.

Kathleen Dooley, City Attorney (Dori E. Martin, Assistant City
Attorney; Landon C. Davis, III; Kevin B. McCandlish; City
Attorney's Office for the City of Fredericksburg; Parrish Snead
Franklin Simpson, PLC, on brief), for appellee the City Council for
the City of Fredericksburg.

No brief or argument for appellees Brian and Loretta McDermott.

The Historic Fredericksburg Foundation, Inc. ("HFFI") appeals the circuit court's

judgment upholding the Fredericksburg City Council's determination that HFFI lacked standing

to pursue a legislative appeal from a decision by the Fredericksburg Architectural Review Board

approving the demolition of a historic structure located in the Old and Historic Fredericksburg

District. HFFI argues, inter alia, that the circuit court erred in finding that HFFI's two claims

brought against the City Council under the Virginia Declaratory Judgment Act were moot. HFFI

also argues that the circuit court applied an incorrect standard of review to the City Council's

decision on HFFI's standing and erred in upholding the City Council's determination that HFFI

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

would not be "aggrieved" by the demolition of the historic structure. For the following reasons, we affirm the circuit court's judgment.

BACKGROUND

HFFI is a nonprofit organization that is devoted to historical preservation issues in Fredericksburg and is headquartered in the historic Lewis Store building on the Lewis block of the Old and Historic Fredericksburg District ("HFD"). The Lewis Store was built in 1749 and is listed in the National Register of Historic Places for its architectural style and as a unique example of the 1749-1820 period of significance. The historic structure that is the subject of this appeal (the "Subject Structure") is a two-story concrete detached garage located in the HFD at 204 Lewis Street that was built between 1910 and 1912 and is an accessory structure to the historic Charles Dick House, which was built between 1744 and 1750. The rear of the Subject Structure faces Lewis Street, and the Subject Structure's garage entry faces south toward the Charles Dick House. The HFFI property at the Lewis Store is located approximately forty-six feet from the Subject Structure.

After the Subject Structure fell into a state of disrepair, its owners, Brian and Loretta McDermott, applied to the Fredericksburg Architectural Review Board ("ARB") for a certificate of appropriateness to demolish the Subject Structure. The City of Fredericksburg hired David B. Bronston, Professional Engineer ("P.E."), of Rock River Engineering, who performed a structural review of the Subject Structure and wrote a report summarizing its deteriorated condition and potential threats, as well as setting forth six steps required to stabilize it. Russell S. Harris, Jr., P.E., of Dominion Engineering Associates, Inc., also examined the Subject Structure and offered his "professional engineering opinion that the structure is a potential danger to life and safety if there were a wall failure and therefore [is] unsafe for occupancy." Harris also opined that the Subject Structure's retaining wall "continues to be in a state of

progressive failure that could result in a future and sudden catastrophic failure based on the history of failure with this wall." Raymond P. Freeland, P.E., of Freeland Engineering, P.C., also examined the Subject Structure and opined that "the degree of danger involved in salvaging this building is, by far, outweighed by the cost of repairs and is much too dangerous to attempt repair." Freeland concluded that "the existing structure should be demolished, and a new structure built on the site." Dallas Barnes, a contractor with Stonehaven Homes, Inc., reviewed the Rock River Engineering report and opined that "the degree of danger involved in salvaging this building is, by far, outweighed by the cost of repairs" and that the type of work required to repair the Subject Structure "could cause the building to collapse."

On June 13, 2022, the ARB voted unanimously to grant a certificate of appropriateness to demolish the Subject Structure due to its poor condition and lack of structural integrity. HFFI appealed the ARB's decision to the Fredericksburg City Council under Fredericksburg City Code ("City Code") § 72-23.1(F)(1). In its legislative appeal, HFFI asserted that it would be "aggrieved" by the demolition of the Subject Structure under the City Code's definition of "aggrieved party," which applies the Supreme Court's standing test set forth in *Friends of the Rappahannock v. Caroline County Board of Supervisors*, 286 Va. 38 (2013). Citing various empirical studies and literature, HFFI alleged that it "has 'a direct, substantial, immediate, and pecuniary interest' in preservation of the Subject Structure that is 'different from that suffered by the public generally'" because "empirical studies demonstrate that demolition of the Subject Structure will have a direct and substantial negative impact on the value of the HFFI Property located approximately 46-feet away." HFFI also alleged that the demolition of the Subject Structure would harm HFFI's historic-preservation efforts by eliminating the Subject Structure from the viewshed of the HFFI property and harming the overall historic character of the portion of the HFD where HFFI resides.

Prior to the appeal hearing before the City Council, HFFI's counsel corresponded by email with Fredericksburg City Attorney Kathleen Dooley. When asked by HFFI's counsel whether the appeal to the City Council is an evidentiary hearing, Dooley responded that the City Council "is not sitting in some quasi-judicial or appellate capacity" and that the City Council "is particularly interested in hearing if the ARB made a procedural or substantive error." Six days before the scheduled hearing, however, Dooley informed HFFI's counsel that she did not think HFFI had standing to pursue its appeal as an "aggrieved person" because HFFI failed to establish that the demolition of the Subject Structure would cause particularized harm to HFFI. Dooley also sent a memorandum to the City Council advising it to first address the threshold question of HFFI's standing to bring its appeal. Dooley recommended that the City Council find that HFFI is not "aggrieved" by the ARB's granting of the certificate of appropriateness because the demolition of the Subject Structure would not impact any of HFFI's legal or equitable rights or impose any burden on HFFI that is different from the general public.

The City Council heard HFFI's appeal on August 23, 2022. At the outset of the hearing, Kate Schwartz, the City Historic Resources Planner, recommended that the City Council dismiss HFFI's appeal for lack of standing, arguing that HFFI failed to demonstrate that the demolition of the Subject Structure would harm the value of HFFI's property at the Lewis Store. In response, HFFI's counsel presented an opinion letter from Robert Rochon, a licensed real-estate broker with twenty-seven years of brokerage experience within Fredericksburg and the HFD. In the opinion letter, Rochon opined that (1) historic district designations have a significant positive impact on property values; (2) historic district properties adjacent to a historic structure enjoy a more substantial increase in property values than other historic district properties generally; (3) demolition of historic structures harms the values of properties adjacent to historic structures; and (4) failure by a locality to enforce historic district regulations diminishes the pecuniary

- 4 -

enhancement in value created by a property's location within a historic district. The City Council ultimately voted 5-2 to dismiss HFFI's appeal for lack of standing.

HFFI subsequently filed a "Petition for Appeal and Motion for Declaratory Judgment" with the circuit court consisting of three counts, the first two of which were pled under the Virginia Declaratory Judgment Act ("VDJA"). In Count 1, HFFI asked the circuit court to declare that the City Council's adoption of a judicial "aggrieved person" standing test for legislative appeals pursued under City Code § 72-23.1(F)(1) exceeds the scope of the City Council's authority and is void ab initio under Dillon's Rule. In Count 2, HFFI asked the circuit court to declare that the City Council's dismissal of HFFI's appeal for lack of standing was per se arbitrary and capricious because the City Council imposed a judicial standing test on HFFI while failing to observe any rules or safeguards required in a judicial proceeding. In Count 3, which HFFI pled under Code § 15.2-2306(A)(3) and City Code § 72-23.1(F)(2), HFFI asserted that the City Council's dismissal of HFFI's appeal for lack of standing was erroneous and contrary to law because HFFI alleged and proved sufficient facts demonstrating that it satisfied the city's "aggrieved person" standing test. The City Council demurred to all three counts.

On April 12, 2023, the circuit court issued a letter opinion sustaining the City Council's demurrers on all three counts. With respect to HFFI's first two counts under the VDJA, the circuit court found that these counts were untimely and moot because they asked for a declaratory judgment to strike down the very ordinance under which HFFI sought redress and, under *Norton v. City of Danville*, 268 Va. 402 (2004), a party challenging a city council's decision under an ordinance may not simultaneously challenge the validity of the ordinance itself. Nevertheless, the circuit court proceeded to evaluate the merits of the issues raised by HFFI. As to Count 1, the circuit court found that the City Council's adoption of an "aggrieved person" standing test for legislative appeals pursued under City Code § 72-23.1(F)(1) was

necessarily and fairly implied by the ordinance's enabling statute, Code § 15.2-2306, and thus does not violate Dillon's Rule.  As to Count 2, the circuit court found that the City Council's decision on HFFI's standing was a legislative determination, and thus the City Council was not required to implement judicial standards of proof or rules of evidence during the legislative appeal.  Finally, as to Count 3, the circuit court upheld the City Council's determination that HFFI lacked standing, concluding that "[g]iven the deferential appeal standard . . . [HFFI] has failed to show that the actions of the City Council in declining to hear the appeal on the basis of lack of standing was either contrary to law or an abuse of discretion."

The circuit court memorialized its rulings in a final order entered on May 8, 2023, which sustained the City Council's demurrers and dismissed HFFI's complaint with prejudice.  This appeal followed.

## ANALYSIS

On appeal, HFFI challenges the circuit court's judgment sustaining the City Council's demurrer on all three counts of HFFI's complaint.  "A circuit court's decision sustaining a demurrer presents a question of law that is reviewed de novo on appeal."  *Historic Alexandria Found. v. City of Alexandria*, 299 Va. 694, 696 (2021).  "When reviewing a decision sustaining a demurrer, the Court must determine whether the allegations of the underlying pleading established 'a foundation in law for the judgment sought.'"  *Id.* (quoting *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006)).  "In making this determination, the Court accepts the facts alleged in the pleading as true and all reasonable inferences that may be drawn from those facts."  *Id.*

### I.  Mootness

In its first assignment of error, HFFI argues that the circuit court erred in determining that HFFI's claims under the VDJA in Counts 1 and 2 of the complaint were moot.

- 6 -

Under the Virginia Declaratory Judgment Act, Code §§ 8.01-184 to -191, circuit courts "shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed and no action or proceeding shall be open to objection on the ground that a judgment order or decree merely declaratory of right is prayed for." Code § 8.01-184. The VDJA "represents a departure from the common law requirement that a litigant suffer actual damage before filing suit." *Berry v. Bd. of Supervisors*, 302 Va. 114, 128 (2023). The purpose of the VDJA "is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." Code § 8.01-191. Under the VDJA, circuit courts are permitted to "render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 55 (2018) (quoting *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970)).

However, "[w]hen the 'actual objective in the declaratory judgment proceeding [i]s a determination of [a] disputed issue rather than an adjudication of the parties' rights,' the case is not one for declaratory judgment." *Id.* (second and third alterations in original) (quoting *Green v. Goodman-Gable-Gould Co.*, 268 Va. 102, 108 (2004)). "Therefore, 'where claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy.'" *Id.* (quoting *Bd. of Cnty. Supervisors v. Hylton Enters., Inc.*, 216 Va. 582, 585 (1976)). "In doing away with the requirement that a litigant suffer actual damage before filing suit, the [VDJA] does not permit a litigant to bring an action that is moot or in

which the claims are so speculative that the action is not ripe for adjudication." *Berry*, 302 Va. at 129. "An action is moot 'when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."'" *Id.* (quoting *Godlove v. Rothstein*, 300 Va. 437, 439 (2022)).

Here, the circuit court correctly found that HFFI's two claims under the VDJA were untimely and moot because HFFI brought those claims after it had already suffered the harm that it sought to avoid by obtaining a declaratory judgment in the first place. Specifically, by the time HFFI brought its VDJA claims asserting that the City Council lacked the authority to adopt a judicial standing test for legislative appeals pursued under City Code § 72-23.1(F)(1), HFFI had already participated in its legislative appeal under that ordinance, subjected itself fully to the ordinance's standing test, and received an unfavorable decision from the City Council that HFFI lacked standing to pursue its appeal. For HFFI's VDJA claims to have been timely, HFFI had to pursue these claims before subjecting itself to and being harmed by the very ordinance that it sought to strike down through the declaratory judgment action. This conclusion accords with the Supreme Court's holding in *Norton* that a plaintiff's "challenge to [an] underlying ordinance as *ultra vires* and violative of the Dillon [R]ule, is barred from consideration in judicial review of [a] city council's action concerning [a] certificate of appropriateness." 268 Va. at 408.

*Berry v. Board of Supervisors* also supports our conclusion. In *Berry*, the Supreme Court held that a plaintiff's declaratory judgment claim asserting that a county board lacked the authority to adopt a new ordinance, Z-Mod, was not moot because the question whether the board had the authority to adopt the ordinance at an electronic meeting was a "live question" for the circuit court when the declaratory judgment action was brought. 302 Va. at 130. Critical to the Court's holding was its observation that the plaintiffs' non-moot declaratory judgment claim was "a *pre-enforcement* challenge to Z-Mod, seeking to prohibit the Board from enforcing the

provisions of Z-Mod or expending taxpayer funds to implement it." *Id.* at 131.  Here, unlike the plaintiffs in *Berry*, HFFI has already been subjected to the enforcement of the very ordinance that it sought to strike down through its declaratory judgment action.  As such, HFFI's claims under the VDJA are not timely "pre-enforcement" challenges to City Code § 72-23.1(F)(1), but rather are untimely "post-enforcement" challenges, rendering them moot.

Accordingly, we hold that the circuit court did not err in finding that HFFI's two claims under the VDJA were untimely and moot.  Thus, HFFI's second and third assignments of error in this appeal pertaining to its VDJA claims are also moot, and we will not consider them.  *See Baldwin v. Commonwealth*, 43 Va. App. 415, 421 (2004) ("The general rule [is] that appellate courts do not sit to give opinions on moot questions." (alteration in original) (quoting *Hallmark v. Jones*, 207 Va. 968, 971 (1967))); *Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998) ("[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." (second alteration in original) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964))).

## II.  Standing

In its fourth assignment of error, HFFI argues that the circuit court erred in applying a "deferential appeal standard" in reviewing the City Council's decision on HFFI's standing and should have applied a de novo standard of review.  In its final assignment of error, HFFI argues that the circuit court erred in upholding the City Council's decision that HFFI would not be "aggrieved" by the demolition of the Subject Structure and thus lacked standing.

City Code § 72-23.1(F)(1) provides that "[a]ny person *aggrieved* by a decision of the ARB [on a certificate of appropriateness] may appeal such decision to the City Council."  City Code § 72-23.1(F)(1) (emphasis added).  In turn, City Code § 72-84.0 defines "aggrieved party" as "[a] party with a direct, substantial, immediate, and pecuniary interest in the subject matter of

the proceeding, in the nature of a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the party different from that suffered by the public generally." The City Code's definition of "aggrieved party" follows the Supreme Court's two-part standing test set forth in *Friends of the Rappahannock*, 286 Va. at 48. Under that test, "[f]irst, the complainant must own or occupy 'real property within or in close proximity to the property that is the subject of' the land use determination, thus establishing that it has 'a direct, immediate, pecuniary, and substantial interest in the decision.'" *Friends of the Rappahannock*, 286 Va. at 48 (quoting *Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals*, 231 Va. 415, 420 (1986)). "Second, the complainant must allege facts demonstrating a particularized harm to 'some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.'" *Id.* (quoting *Va. Marine Res. Comm'n v. Clark*, 281 Va. 679, 687 (2011), *overruled in part on other grounds by Woolford v. Va. Dep't of Tax'n*, 294 Va. 377 (2017)).

In general, Virginia courts "review de novo the question of whether [an] appellant['s] factual allegations were sufficient to establish standing, as this issue presents a question of law." *Platt v. Griffith*, 299 Va. 690, 692 (2021). However, in the context of the Fredericksburg ARB's decision on a certificate of appropriateness to demolish a historic structure, the standard of review that the Fredericksburg Circuit Court must employ upon the City Council is governed by City Code § 72-23.1(F)(2), which provides that "[t]he court may reverse or modify the decision of the City Council, in whole or in part, if it finds upon review that the decision of the City Council *is contrary to law or that its decision is arbitrary and constitutes an abuse of discretion*." City Code § 72-23.1(F)(2) (emphasis added). This ordinance tracks the language of its enabling statute, Code § 15.2-2306, which likewise provides that "[t]he court may reverse or modify the decision of the governing body, in whole or in part, if it finds upon review that the

decision of the governing body *is contrary to law or that its decision is arbitrary and constitutes an abuse of discretion.*" Code § 15.2-2306(A)(3) (emphasis added).

Here, in its letter opinion, the circuit court employed the correct standard of review upon the City Council's decision, stating that "[t]he standard of review for the Circuit Court is to determine if the City Council decision was: (1) contrary to law; or (2) arbitrary and constitutes an abuse of discretion." In accordance with this standard of review, the circuit court stated that it "rejects the argument that the majority decision by the City Council was contrary to law or arbitrary so as to constitute an abuse of discretion." The circuit court also concluded, based on this standard of review, that "[g]iven the deferential appeal standard . . . [HFFI] has failed to show that the actions of the City Council in declining to hear the appeal on the basis of lack of standing was either contrary to law or an abuse of discretion." As we read the letter opinion, the circuit court's reference to a "deferential appeal standard" here was simply its own general characterization of the correct standard of review that it was applying.

Moreover, the circuit court did not err in applying a "fairly debatable" standard of review in concluding that "reasonable persons could disagree as to whether . . . [HFFI] met the standard of particularized harm," as the City Council's decision on HFFI's standing was, at its core, a legislative action, not a judicial one. *Norton* supports this conclusion. In *Norton*, like here, the Supreme Court considered whether a city council's decision in a legislative appeal was arbitrary or contrary to law under Code § 15.2-2306(A)(3). *Norton*, 268 Va. at 408-10. In performing its analysis, the Court observed that the city council's decision was a "legislative action" and thus was "subject to the same . . . standard of review" for other kinds of legislative actions—namely, the "fairly debatable" standard. *Id.* at 408-09. Under this standard of review, "legislative actions are presumptively correct" and are "reasonable if the matter in issue is fairly debatable." *Id.* "An issue may be said to be 'fairly debatable when the evidence offered in support of the

- 11 -

opposing views would lead objective and reasonable persons to reach different conclusions.'" *Id.* at 409 (quoting *Bd. of Supervisors v. Williams*, 216 Va. 49, 58 (1975)).

In this case, reasonable and objective persons could have reached different conclusions as to whether HFFI would have suffered particularized harm—i.e., a decrease in HFFI's property value—from the demolition of the Subject Structure. During the proceedings below, HFFI presented evidence generally establishing that historic structures tend to have a positive impact on the property values of other properties located in historic districts—especially properties located adjacent to historic structures. However, this generic, non-particularized evidence failed to account for the specific nuances and stark realities present here: (1) the Subject Structure was, as opined by several experts, in a dangerous state of abject disrepair; (2) the Subject Structure was, at most, an "accessory structure" to the Charles Dick House and was built almost two centuries after the colonial time period in which both the Charles Dick House and Lewis Store were built; and (3) HFFI ultimately presented no evidence establishing that the Subject Structure was actually listed in any national or state database as a historically significant property or historic landmark. Under these circumstances, an objective person could reasonably conclude that the demolition of the Subject Structure would be unlikely to cause any significant, particularized harm to the value of HFFI's historic property at the Lewis Store. Accordingly, we hold that the City Council's decision that HFFI lacked standing was fairly debatable, and thus the circuit court did not err in upholding that decision.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*